# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

BRANDY ANNANAFAYE LOCKE,

    Plaintiff,

v.                                  Case No. 3:23-cv-8281-TKW/MJF

MARTIN O'MALLEY,[1]

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Brandy Annanafaye Locke brings this action under 42 U.S.C. § 405(g) to seek review of a final adverse decision of the Commissioner of the Social Security Administration. Because the Commissioner applied the proper legal standards, and her decision is supported by substantial evidence, the District Court should affirm the Commissioner's decision.

---

[1] Martin O'Malley is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is automatically substituted as a party. Fed. R. Civ. P. 25(d).

## I. Procedural History

On February 23, 2021, Plaintiff applied for disability insurance benefits ("DIB"), and she alleged a disability-onset date of April 1, 2019. Tr. 203–09.[2] The Social Security Administration ("SSA") denied her claim initially and on reconsideration. Tr. 77–87, 88–99. On July 7, 2022, Plaintiff, represented by counsel, appeared and testified during a telephonic hearing before an administrative law judge ("ALJ"). Tr. 51–76. On August 31, 2022, the ALJ issued a written decision and found that Plaintiff was not disabled. Tr. 27–45. The appeals council denied Plaintiff's request for review. Tr. 1–3. Thus, the ALJ's decision stands as the final decision of the Commissioner, subject to review by the District Court. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

## II. Standard of Review

The District Court's review of the Commissioner's final decision is limited. The District Court reviews the Commissioner's decision to

---

[2] "Tr." refers to the transcript of the Social Security Administration record filed on June 20, 2023. Doc. 6. The page numbers cited herein are those found on the bottom right corner of each page of the transcript.

ensure that the Commissioner applied the proper legal standards and substantial evidence supports the decision. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The District Court reviews questions of law *de novo*. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313–14 (11th Cir. 2021) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). For factual determinations, the District Court must determine whether the ALJ's decision is supported by "substantial evidence." *Id.* at 1313.

"Substantial evidence" is not an exacting standard. *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019). Although substantial evidence is "more than a mere scintilla," it is not a preponderance; it requires only "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Id.* at 1154; *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Even if the evidence preponderates against the ALJ's findings, the District Court must affirm if the ALJ's decision is supported by substantial evidence. *Viverette*, 13 F.4th at 1314.

Pursuant to 20 C.F.R. § 404.1520(a)(4)(i)–(v),[3] the Commissioner analyzes a disability claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments or combination of impairments that meet or equal those listed in 20 C.F.R. Part 404?

4. Does the individual have the residual functional capacity ("RFC") to perform work despite limitations and are there any impairments that prevent past relevant work?

5. Do the individual's impairments prevent other work?

The claimant bears the burden of establishing a severe impairment that keeps her from performing past relevant work. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278 (11th Cir. 2020). If the claimant establishes such an impairment, the burden shifts to the Commissioner

---

[3] Generally, the same legal standards apply to claims for DIB and SSI, but separate parallel statutes and regulations govern each claim. *See* 20 C.F.R. §§ 404, 416. Citations of statutes or regulations found in quoted court decisions in this report and recommendation should be considered to refer to the appropriate parallel provision.

at step five to show the existence of other jobs in the national economy that, given all of the claimant's impairments, the claimant can perform. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021). If the Commissioner carries this burden, the claimant then must prove that she cannot perform the work suggested by the Commissioner.

### III. SUMMARY OF EVIDENCE ELICITED AT PLAINTIFF'S HEARING

Plaintiff is five feet, four inches tall, and, at the time of the hearing before the ALJ, she was thirty-two years old, weighed 260 lbs., and had a history of smoking cigarettes daily. Tr. 65, 353, 372. Plaintiff testified that she previously worked at a call center and, before that, as a personal assistant for a boy who was confined to a wheelchair. Tr. 56–57. Prior to the onset date of Plaintiff's disability, she held various jobs that the Vocational Expert ("VE") classified as "a composite job as a laborer," ranging from "medium, semi-skilled" work to "light, unskilled" work. Tr. 58–59, 71–72.

The VE testified that a hypothetical person with Plaintiff's RFC could not perform Plaintiff's past relevant work. Tr. 72. The VE testified that a hypothetical individual with Plaintiff's RFC could perform other jobs that exist in significant numbers in the national economy. *Id.* The

VE identified three such jobs:

- laundry sorter, DOT 361.687-014 (~150,000 jobs in the national economy);

- inserting machine operator, DOT 208.685-018 (~200,000 jobs in the national economy); and

- housekeeping cleaner, DOT 323.687-014 (~2.8 million jobs in the national economy).

Tr. 73. The Dictionary of Occupational Titles ("DOT") lists the laundry sorter and inserting machine operator positions as level 2 reasoning jobs, and the housekeeping cleaner job as a level 1 reasoning job.

The ALJ then posited whether a person who needed to alternate between sitting and standing could perform these same jobs. Tr. 74. The VE testified this limitation would "rule out the housekeeping cleaner" job. The VE noted that the other two jobs could still be performed with that limitation and also identified a third job: electrical assembler, DOT 729.687-010 (~30,000 jobs in the national economy).[4] *Id.* The VE explained that the DOT "doesn't address the sit/stand option," so the VE

---

[4] The DOT lists the position of "electrical assembler" as a level 2 reasoning job.

based the testimony regarding jobs requiring a sit-stand limitation on his own "knowledge, education, [and] years of experience." Tr. 75. Finally, the ALJ inquired whether the VE's testimony was consistent with the DOT, to which the VE responded, "It is." Tr. 73.

## IV. THE ALJ'S FINDINGS

In denying Plaintiff's claim, the ALJ made the following findings under 20 C.F.R. § 404.1520(a)(4)(i)–(v):

1. Plaintiff met the insured-status requirements of the Social Security Act ("the Act") through December 31, 2023;

2. Plaintiff had not engaged in substantial gainful activity since April 1, 2019, the alleged onset date;

3. Plaintiff had the following severe impairments: prediabetes, small fiber neuropathy, carpal tunnel syndrome, hypertension, hypothyroidism, obesity, depressive disorder, anxiety disorder, and trauma disorder;

4. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

5. Plaintiff had the RFC to perform light work as defined in 20

C.F.R. § 404.1567(g) with the additional following limitations:[5]

> [Plaintiff] can occasionally climb ramps and stairs, and never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch, or crawl. She can perform frequent but not constant handling and fingering bilaterally. She cannot perform work requiring the use of vibrating tools. She can perform simple tasks for 2-hour periods with customary breaks over the course of an 8-hour workday[;]

6. Plaintiff was unable to perform past relevant work, but given her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform; and

7. Plaintiff was not disabled, as defined in the Act, from April 1, 2019, through the date of the decision, August 31, 2022. Tr. 30–45.

## V. Discussion

Plaintiff raises two issues: (1) whether the ALJ erred in evaluating medical opinions and Plaintiff's obesity and (2) whether the ALJ erred in failing to resolve an apparent conflict between the VE's testimony and the DOT. Doc. 11 at 5–8.

---

[5] The undersigned identifies only those limitations that are relevant to the arguments raised by Plaintiff on appeal.

A. <u>**Substantial Evidence Supports the ALJ's Step-Four Finding**</u>

Plaintiff first argues that the ALJ erred by finding that the opinions of the state agency medical consultants were "not fully persuasive" as to their recommendations that Plaintiff's RFC include a limitation that Plaintiff should be allowed to alternate between sitting and standing every two hours as needed to relieve pain and discomfort (the "sit-stand limitation"). Doc. 11 at 5–6. According to Plaintiff, the ALJ erred because the ALJ's "evaluation entirely ignores" the need for the sit-stand limitation due to Plaintiff's "morbid obesity." Doc. 11 at 6.

The Commissioner contends that substantial evidence supports the ALJ's assessment that the state agency medical consultants' opinions were "not fully persuasive." Doc. 12 at 6. Specifically, the Commissioner argues that "the ALJ was not required to explicitly address whether obesity supported the stage agency consultants' proposed [sit-stand] limitation" because the ALJ "comprehensively detailed Plaintiff's complaints regarding neuropathy as inconsistent with the other medical evidence" and "[h]aving addressed one of the two contributing conditions supporting the state agency consultants' opinions, the ALJ was not obliged to discuss the other." Doc. 12 at 9 (citing *Porto v. Acting Comm'r*

*of Soc. Sec.*, 851 F. App'x 142, 147 (11th Cir. 2021)). Furthermore, the Commissioner argues that, although the ALJ did not explicitly address Plaintiff's obesity, the ALJ's discussion reflects that the ALJ considered Plaintiff's obesity in rejecting the sit-stand limitation. Doc. 12 at 10.

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citation omitted). In determining a claimant's RFC, the ALJ must consider all relevant evidence in the record, including the opinions of medical and non-medical sources. 20 C.F.R. § 404.1545(a)(3).

Under the SSA's regulations, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" from the claimant's medical sources. *Id.* § 404.1520c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897 (11th Cir. 2022). Instead, the Commissioner will consider the medical source's medical opinions together with the following factors, as appropriate: (1) supportability, (2) consistency, (3) relationship with the claimant, (4)

specialization, and (5) other factors. 20 C.F.R. § 404.1520c(a), (c). Of those factors, supportability and consistency are the most important ones to evaluate the persuasiveness of a medical source's opinion. *Id.* § 404.1520c(b)(2); *Bevis v. Comm'r of Soc. Sec.*, 552 F. Supp. 3d 1266, 1271 (M.D. Fla. 2021).

With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1); *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 578 (S.D.N.Y. 2022). With respect to consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be." 20 C.F.R. § 404.1520c(c)(2); *Jackson*, 588 F. Supp. 3d at 578.

An ALJ's explanation of consistency and supportability must be "sufficiently detailed." *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021). Ultimately, an ALJ's explanation of consistency and supportability is sufficient if it allows the court "to undertake a meaningful review of whether [the ALJ's] reasoning was supported by

substantial evidence . . . ." *Pearson v. Comm'r Soc. Sec.*, No. 1:20-cv-166-HSO-RPM, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 3663073, *2 (S.D. Miss. Aug. 18, 2021).

Here, in June 2021 and January 2022, two state agency consultants opined that Plaintiff could perform light work with the additional limitation that Plaintiff should be allowed to alternate between sitting and standing every two hours as needed to relieve pain and discomfort. Tr. 82–83, 93. The consultants based their sit-stand limitation recommendation on both Plaintiff's peripheral neuropathy and her morbid obesity. *Id.* The ALJ found that these opinions were not "fully persuasive." The ALJ stated:

> [Plaintiff] had minimal, if any, formal neurologic care since 2020. Even during neurologic care in 2020, [Plaintiff's] physical exam findings were generally normal. Going forward, primary care treatment has been conservative with generally normal exam findings. The generally normal exam findings at both neurology and primary care and the minimal treatment for neuropathic symptoms during the period at issue show that the restriction to alternating between sitting and standing every two hours is not warranted.

Tr. 42 (internal citations omitted). Although the ALJ did not specifically refer to Plaintiff's obesity in addressing the consultants' opinions, it is

clear that the ALJ's decision was not a broad rejection of the consultants' opinions. *See Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005).

In her decision, the ALJ recounted the medical evidence that supported "the finding that no greater restrictions [in Plaintiff's RFC] are warranted." Tr. 37. The evidence cited by the ALJ included three years of Plaintiff's medical records, in which Plaintiff's BMI rates of 39.1 (October 2019); 40.3 (December 2019); 43.3 (March 2020); and 41.9 (April 2021) were recorded. Tr. 38–39. The ALJ noted that, despite Plaintiff's neuropathy and BMI rates, the exam findings reflected that Plaintiff ambulated normally; had normal gait; had "normal movement of all extremities;" had 5/5 strength throughout; and "had intact light touch sensation." Tr. 38, 39, 316, 318, 321, 324, 326, 355, 458–59, 463, 468, 470, 516, 543–44. The ALJ found that the consultants' recommendations were inconsistent with these generally "normal exam findings," Plaintiff's conservative treatment with her primary care physicians, and her minimal neurologic care after 2020. Tr. 37–38, 42. Furthermore, based on these medical records, the ALJ concluded that Plaintiff's "obesity [was] accounted for by the restriction to light work with the postural

limitations described in the residual functional capacity." Tr. 38; *see* Tr. 37, 39.

The ALJ's discussion is sufficiently detailed for the District Court to determine that the ALJ fully and properly considered the consultants' opinions along with the objective medical evidence—including evidence related to Plaintiff's obesity—in concluding that Plaintiff did not need a sit-stand limitation in her RFC. *See Porto*, 851 F. App'x at 147. Plaintiff, therefore, has not shown reversible error.

**B.** **The ALJ's Failure to Resolve an Apparent Conflict in the Evidence Was Harmless Error**

Next, Plaintiff argues that the ALJ erred by failing to resolve an apparent conflict between the VE's testimony and the DOT, in contravention of SSR 00-4p. Doc. 11 at 7–8. The conflict stems from the ALJ's reliance on the VE's testimony at step five—that Plaintiff could perform level 2 reasoning jobs even though the ALJ determined at step four that Plaintiff was limited to "short, simple tasks." *Id.* Plaintiff argues that this error is not harmless because the only level 1 reasoning job identified by the VE—housekeeping cleaner—"could not be performed by an individual who needed a sit-stand" limitation. *Id.* at 6, 8; Tr. 74.

The Commissioner concedes that the ALJ erred by failing to resolve the apparent conflict in the evidence between the VE's testimony and the DOT as it relates to the level 2 reasoning jobs. Doc. 12 at 10. The Commissioner, however, argues that this error was harmless because the error affected approximately 11% of the jobs identified by the VE, and there remained in the national economy approximately 2.8 million that Plaintiff could perform. Doc. 12 at 10–16.

As discussed above, the ALJ properly discounted the consultants' opinions regarding the sit-stand option. The ALJ was not required to include in the RFC any limitations, restrictions, or opinions that properly were rejected or that were otherwise unsupported by the record. *See McSwain v. Bowen*, 814 F.2d 617, 620 n.1 (11th Cir. 1987). Thus, the ALJ's reliance on the VE testimony that Plaintiff could perform the job of housekeeping cleaner was not erroneous.

Plaintiff did not challenge the ALJ's determination that there were 2.8 million housekeeping cleaner jobs in the national economy. Doc. 11 at 6–8. Furthermore, she did not challenge the ALJ's failure to consider whether the 2.8 million housekeeping cleaner jobs, standing alone, constituted a significant number of jobs in the national economy. *Id*. This

amounts to a waiver of these issues. *See* Doc. 4 at 4 ("[A]ny issues not raised in the parties' briefs may be deemed to have been waived."). Regardless, substantial evidence supports the ALJ's determination that there were a significant number of jobs in the national economy that Plaintiff could perform.

At step five of the sequential evaluation, the Commissioner must consider the claimant's RFC, "age, education, and work experience to determine whether the claimant can make an adjustment to other work." *Phillips*, 357 F.3d at 1239 (citation and internal quotation marks omitted). The burden temporarily shifts to the Commissioner to show that other jobs exist in significant numbers in the national economy which, given the claimant's impairments, the claimant can perform. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (citation omitted).

"Whether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by

a judicial officer [*i.e.*, the ALJ]." *Viverette*, 13 F. 4th at 1318 (quoting *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986)). "It is not appropriate for [the] court to decide, in the first instance, whether a *relatively low number* qualifies as a 'significant number' of jobs." *Kimes v. Comm'r, SSA*, 817 F. App'x 654, 659 (10th Cir. 2020) (emphasis added). Generally, "judicial line-drawing in this context is inappropriate, [because] the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation and . . . [because] the evaluation 'should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" *Viverette*, 13 F.4th 1309 at 1318 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1146 (10th Cir. 2004)).

"That is not to say that under no circumstances would a specific number of jobs be considered *per se* significant for step five purposes." *Ledford v. Comm'r of Soc. Sec.*, No. 8:20-CV-2516-JSM-SPF, 2022 WL 2195001, at *4 (M.D. Fla. June 1, 2022), *report and recommendation adopted*, No. 8:20-CV-2516-JSM-SPF, 2022 WL 2193158 (M.D. Fla. June 17, 2022); *see Allen*, 357 F.3d at 1146 (noting that harmless error "might have been open to us here had the number of available jobs identified by

the VE not been one hundred but considerably greater"). Indeed, some courts have concluded that remand is unnecessary when the number of non-conflicted jobs in the national economy is greater than 100,000, because any such error would be harmless. *Denmark v. Kijakazi*, 2022 WL 831903, at *7 (M.D. Fla. March 21, 2022) (finding harmless error when ALJ's decision was still supported by the availability of 551,000 non-conflicted jobs in the national economy); *Rodriguez v. Comm'r Soc. Sec. Admin.*, 2022 WL 4364506, at *5 (M.D. Fla. Sept. 21, 2022) (finding harmless error when ALJ's decision was still supported by the availability of 220,000 non-conflicted jobs in the national economy); *accord Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (finding harmless error because there were approximately 650,000 non-conflicted jobs available in the nation economy); *Carpenter v. Acting Comm'r of Soc. Sec.*, No. 5:23-CV-00037-KDB, 2023 WL 7726706, at *5 (W.D.N.C. Nov. 15, 2023) (concluding that it was harmless error when 134,000 non-conflicted positions existed in the national economy).

In this case, only 11% of the jobs identified by the VE were affected by the conflict. This left approximately *2.8 million* non-conflicted jobs in the national economy that Plaintiff could perform. Tr. 44. This

uncontested figure is substantially more than the number of jobs in *Denmark*, *Rodriguez*, *Anderson,* and *Carpenter* cited above. Therefore, the ALJ's error at Step 5 is a harmless error because 2.8 million jobs in the national economy is a significant number. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (concluding that as a matter of law, 1.34 million jobs in the national economy is a significant number); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (80,000 jobs in the nation was a significant number); *accord Milhem v. Kijakazi*, 52 F.4th 688, 697 (7th Cir. 2022) (concluding that 89,000 jobs was a significant number of jobs).

## VI. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1. **AFFIRM** the Commissioner's decision and **DISMISS** this action.

2. Enter **FINAL JUDGMENT**, pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's decision.

3. **DIRECT** the clerk of the court to close the case file.

At Pensacola, Florida, this 10th day of January, 2024.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters.** *See* **N.D. Fla. Loc. R. 72.2;** *see also* **28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation.** <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> **An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**